# Central Kentucky Traction Company, et al. v. City of Winchester.

(Decided February 13, 1917.)

## Appeal from Clark Circuit Court.

1. Municipal Corporations — Franchises — Street Improvements. — A city of the fourth class passed an ordinance providing for the improvement of a street over which the tracks of a street railway company had been laid, which company, by its franchise theretofore granted by the city, had contracted to construct that portion of the street between its rails and eighteen inches on either side thereof, or to pay for the construction of that portion of the street, provided ten days' notice was given. Held, that the street railway company, having constructive notice under the ordinance, and actual notice from the mayor, of the city's intention to construct the street, including that part of same for which the railway company was liable, and having refused to perform its part of the improvement, after opportunity so to do, and having stood by without offer to perform or objection to the city's performance, and having received the benefit of the improvement, will not be heard to question the sufficiency of the city's demand, in order to escape liability.

2. Municipal Corporations—Street Construction — Ordinances. — The improvement ordinance required the excavation under that portion of the street covered by the railway company's tracks to be deeper than the excavation under the rest of the street, and the franchise by which the company's liability for the construction was fixed provided that the portion of the street the company was required to construct should be improved so as to conform in all respects with the rest of the street. Held, that, the extra excavation being necessary in order to provide space for the company's ties and rails, this was not a violation of the franchise contract and was no defense to an action by the city to recover for the work done.

3. Municipal Corporations—Street Improvements — Ordinances. — A provision in a street improvement ordinance, that the construction should be done at the exclusive cost of the abutting owners, upon whom the law cast the burden, did not, in such case, relieve the railway company from liability, it having assumed the liability of the abutting owners, to the extent of that portion of the street which lay between its tracks and eighteen inches on either side thereof.

4. Municipal Corporations—Street Improvements—Abutting Owners. —The fact that, in an action by the city to recover for that portion of an improvement for which the railway company was liable under its franchise contract, the petition of abutting owners to be made parties was filed, but the abutting owners were not, by an order of court, made parties to the action, was not prejudicial to

the railway company and will not authorize a reversal of a judg-ment in favor of the city and the petitioners, for and on behalf of all abutting owners, for the amount due for the construction of that portion of the street, as the city had the right, for the use and benefit of the abutting owners, to sue for and recover such amount, the entire cost having been, by ordinance, originally as-sessed against the abutting owners.

PENDLETON, BUSH & BUSH for appellants.

O'REAR & WILLIAMS, B. R. JOUETT, HARVEY T. LISLE and J. SMITH HAYS for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

On September 7th, 1906, a street railway franchise was granted by the city of Winchester, a city of the fourth class, to the Central Kentucky Traction Company. The franchise contained the following agreement upon the part of the traction company, which is the basis of this action:

"Should the city at any time, from time to time, change the material of the streets through which said railroad runs through said city are constructed, or the grade thereof, and reconstruct or rebuild said streets or any portion of them, with brick or other material than macadam, of which they are now constructed, said pur-chaser or his assigns on the demand of the city council shall rebuild or reconstruct the space between the rails of its road and for eighteen inches on each side of said rails through said portions of said streets which are thus rebuilt or reconstructed by the city, with the same kind of material used by the city and such portions of said streets so reconstructed by the said purchaser or his assigns shall be made at the expense of said pur-chaser or his assigns and to conform in all respects with the remainder of said street so constructed by the city.

"9th. If said grantees shall ever at any time fail to promptly and fully conform and comply with any duty or obligation herein imposed, then the said city of Win-chester may, at its option, proceed to perform and exe-cute the same at the cost and expense of said grantee, and the said grantee shall immediately become and re-main liable to the city of Winchester for any and all loss, expense, cost or damage; ten days' notice, however, of such failure and of the thing required to be done shall first be given the grantee."

After this franchise was granted, and before the passage of the ordinance hereinafter referred to, the Central Kentucky Traction Company was consolidated with the Kentucky Traction and Terminal Company. Under section 3572, Kentucky Statutes, which is a part of the charters of cities of the fourth class, such cities are authorized and empowered to make such improvements as were made here, at the exclusive cost of the abutting property owners, and, under this authority, the city council of Winchester, in May, 1912, regularly passed an ordinance providing, in conformity with the law, for the paving, with brick, of the streets of the city, including a portion of Main street, which, alone, is involved here, and providing that the cost and expense of this improvement, in accordance with the specifications therein set out, should be at the exclusive cost of the abutting property owners, to be apportioned, by the city engineer and board of council, according to the number of front feet owned by the owners respectively, with liens upon such property to secure payment of the amounts thus apportioned.

No question is made, that the ordinance was not regularly passed; that the work was not done, by the contractors to whom the contract was awarded, according to the contract; that the work was not received by the city, and the liability of abutting property owners fixed for their respective apportionments, with liens attaching to their respective properties, to secure such apportionments. After the passage of this ordinance, and in accordance therewith, the city, on the 2nd day of August, 1912, contracted with Daniels, Lyst & Douglas, the successful bidder, for the reconstruction of the said street. On September 16th, 1912, the mayor of the city caused to be served upon appellant, a written notice, which is as follows:

"September 10th, 1912.

"Central Kentucky Traction Co.,
        City.

"Gentlemen:—

"You are hereby notified that the board of council of the city of Winchester, has, by ordinance duly adopted, directed that Main street between the C. & O. R. R. and Boone avenue in this city, be improved by original construction, by paving with vitrified brick.

"One section of said ordinance is as follows:

"The street railway track shall be composed of seven (7) inch girder street car rails, on the best quality of sawed white oak ties, six inches deep, seven inches wide and seven feet long. The sub-grade shall be excavated to a depth of seventeen (17) inches. The ties shall be spaced three feet center to center. The ties shall rest on a bed of concrete four (4) inches thick and be filled between and over and at the ends with concrete as shown on plan in city engineer's office. The concrete shall be of the same quality as for paving foundation. The price in the proposal shall cover excavating foundation, locking up track, putting in concrete and completing the paving between tracks and eighteen inches outside of each rail. The street railway company to furnish rails, connections, spikes and ties, and lay ties and rail.

"And that you are expected to comply with the conditions as set out in your franchise by which you are to construct that part of the street between the rails and within eighteen inches on either side thereof.

"(Signed) J. A. HUGHES,
"Mayor of the city of Winchester, Ky.
"This Sept. 10th, 1912."

Before the service of this notice, the contractors had begun work on that portion of Main street involved in this controversy, but whether upon that portion of the street that appellant, under the franchise, was required to construct, is not entirely free from doubt, as there is some conflict in the evidence upon that point, but certain it is, that no work of any consequence had then been done, upon that part of the street for the construction of which appellant was liable. Appellant paid no attention to the notice, did not offer or express a desire to do the work itself, which under the franchise it had the option, under certain conditions, to perform, but stood by and watched the contractors perform the work according to the city's specifications, and saw the city receive the work, without objection of any kind, except that, upon the day the notice was served upon it, when waited upon informally by some of the members of the city council, at its office in Lexington, the vice president and chief officer in Kentucky of the railway company, Mr. Bacon, stated, according to his version: "We declined construction of that type, as it was an obsolete type of construction and unduly expensive, and a type

of construction that we had discontinued the use of for years before, and that we did not consider either proper or good construction for this city, and that we could not proceed with the work of that character." According to the version of the city attorney, who was present, Mr. Bacon stated, the company was going to decline to have anything to do with it, because he had concluded, after consulting with its engineer, that the foundation required was not sufficient to support the track.

Whether the reason was as stated by Mr. Bacon, or as stated by Mr. Haggard, the city attorney, there is no question but that the company did refuse to construct that part of the street included between the rails and eighteen inches on either side of the track.

After the work had been completed by the contractor and had been accepted by the city, and the cost of construction, of the entire street, had been apportioned to the abutting property owners, the city brought this suit against appellant, seeking to recover, under the franchise agreement, the amount due under the contract with Daniels, Lyst & Douglas, for the construction of that portion of the street included between the rails and eighteen inches on either side thereof, amounting to $6,996.42, with interest from December 6th, 1912, the date the work was accepted by the city. In its petition, the city, after setting up its franchise contract with appellant, the improvement of the street by the city, the apportionment of the entire cost thereof to the abutting property owners, and appellant's refusal to perform or pay for its part of said improvement, concluded as follows:

"The plaintiff says that by reason of the obligation set forth in said franchise and of the performance of the work of improving Main street as set forth herein, the defendant, Central Kentucky Traction Company and its assignee, Kentucky Traction & Terminal Company, became indebted to the city of Winchester primarily for the use and benefit of the street improvement fund created and to be created for the improvement of Main street as herein set forth in the sum of $6,996.42 with interest from December 16th, 1912, until paid at the rate of 6% per annum, and that the defendants have paid no part of said sum and it is past due.

"Wherefore, the plaintiff, the city of Winchester, prays judgment for the use and benefit of the street improvement fund of said city against the defendants,

Central Kentucky Traction Company and the Kentucky Traction & Terminal Company, for $6,996.42 with interest from the 16th day of December, 1912, until paid, and for its costs and all proper relief."

Appellant filed answer, defending upon the ground, that it was not liable for any of the construction work, because the city had failed to give it notice, as the franchise required, that the work was required of it; that the ordinance under which the work was done assessed the total cost of the improvement against the abutting property owners and required of appellant, only, "to furnish rails, connections, spikes and ties and lay ties and rails;" that the street railway company, by its franchise, was liable only for a construction "with the same kind of material . . . . to conform in all respects with the remainder of such street, so constructed by the city," whereas the improvement made under the ordinance, by the city, between the company's rails and eighteen inches on either side thereof, did not conform with the remainder of the street. Appellee, by reply, traversed the affirmative allegations of the answer, and plead affirmatively, that appellant had waived the notice required under the franchise, and that it was estopped to deny notice, by its notification to city officials, that it would not perform any of the work required by the ordinance, and by its acquiescence in the performance of the contract.

At this point, J. L. Brown, J. D. Simpson, W. S. Massey and J. H. Keyes, citizens and taxpayers of the city of Winchester, and owners of property abutting upon that portion of Main street traversed by appellant's railway and involved in this controversy, filed a petition to be made parties to this action, and, for themselves, and on behalf of all other citizens and owners of abutting property, to recover of appellant the sum of $6,996.42, to be credited upon the apportionments made by the city against the abutting owners for the street improvement. Appellant then filed a rejoinder traversing the affirmative allegations of the city's reply, and filed a special and general demurrer to the petition of J. L. Brown, et al. Thereafter, on September 25th, 1914, the city of Winchester filed a surrejoinder, completing the issues between it and appellant.

On December 7th, 1914, depositions for appellant, filed October 21st, 1914, were noted of record, and the cause submitted for judgment, without objection. On the

11th day of December, 1914, this submission was set aside, on motion of plaintiff, and without objection, in order to permit J. L. Brown, et al., to file an amended petition, to the filing of which there was no objection. This amended petition set up, in detail, the exact amount which the city, by a later ordinance, had fixed as due each abutting property owner, from appellant, for the portion of the improvement for which appellant was liable, that had been assessed against each abutting property owner, which totaled $7,000.09, and judgment was asked for that sum, rather than $6,996.42, and, that the plaintiff, city of Winchester, be required to credit to each property owner the sum therein shown to be due such abutting property owners respectively. Immediately following the filing of this amended petition, on motion of plaintiff, the cause was re-submitted. On December 14th, 1915, appellant moved the court to set aside the order of submission and to permit it to file answer to the amended petition of J. L. Brown, et al. This the court refused to do, but made appellant's tendered answer part of the record.

On the 19th day of December, 1914, the court entered a judgment against appellant in favor of the city of Winchester and the petitioners, J. L. Brown, et al., for and on behalf of all owners of property abutting upon that part of Main street involved here, setting out the amount due each abutting property owner, which amounts aggregated $7,000.09.

Before entering the judgment, the petitioners, J. L. Brown, et al., were not, by an order of the court, made parties to the action, nor did the court rule upon the general or special demurrer, filed by appellant, to the petition of J. L. Brown, et al., to be made parties. The answer of appellant to the petition of J. L. Brown, et al., to be made parties, simply attacked the methods pursued by the adjoining property owners in procuring a mandamus from the circuit court, requiring the city council to apportion to the abutting property owners, the amounts due each by the street railway company, under its franchise contract with the city; but the tendered answer did not deny the correctness of any of the amounts thus apportioned, and said sums, so apportioned, aggregated $7,000.09, whereas the amount prayed for in the petition, and asserted to be the amount of appellant's liability, under the contract, is $6,996.42. The difference in these amounts is so trivial that this court

would not order a reversal because of an error in the judgment, even if it were clear that there was such an error, in accepting one of these amounts, rather than the other. However, as the tendered answer of appellant to the amended petition of J. L. Brown, et al., did not deny the correctness of the aggregate amount of the apportionments therein, or of any of the apportionments, it would seem that the court was authorized in accepting the sum therein stated to be due, rather than the sum originally stated in the petition.

Counsel for appellant complain of the refusal of the court to pass upon the general and special demurrers to the petition of J. L. Brown, et al., to be made parties; of the refusal of the court to file the tendered answer to such petition; and of the fact that the court, in setting aside the order of submission made in the absence of counsel for appellant, put appellant upon terms, by limiting its time for taking proof. But, even if we were to concede that the court's action, in each of these instances, was erroneous, which, however, is not true, appellant would still be in no position to complain, by reason of the fact that by none of these rulings was it, in any way, prejudiced, since its only defense is that it is not liable at all, but does not complain, if liable, of the disposition of the funds ordered by the judgment, and it does not claim to have been prevented from introducing all the evidence it had, in the time given by the court.

Therefore, we shall waive the question, whether or not the individual property owners were, in fact, made parties to the action, and we will now consider the question, upon its merits, at issue upon the pleadings filed by the city, on the one hand, and by appellant, on the other, and that question, is, whether or not, under the franchise, appellant is liable for the amount due under the city's contract for the reconstruction of that portion of Main street between the railway tracks and eighteen inches on either side thereof. Undoubtedly, appellant's franchise was a valid and subsisting contract, supported by a good and sufficient consideration, which imposed upon appellant the obligation to either make, itself, upon demand by the city, such improvements as the ordinance required to be made, or to pay for same, when made by the city after its refusal to comply with the demand.

We shall, first, consider, whether the city, before making the improvement, made such demand upon appellant to do it, as was provided for in the franchise. Coun-

sel for appellant contend, that the city could make a demand only through its council, by an order entered of record, and, that the notice served upon it, by the mayor of the city, in the absence of such order of record, was of no effect whatever. In the case of C. & O. Ry. Co. v. Mullins, 94 Ky. 355, it was held, that where a city charter, which authorized the city to construct sidewalks, and to assess the cost of such construction against the abutting property, provided that the owners of such property should, for the period of fifteen days, have the privilege of doing the work themselves, notice to the lot owners of the passage of the ordinance or resolution providing for the improvement, was necessary in order to give the lien for the cost of construction, but actual notice was not required; that the passage and publication of the ordinance furnished the owner with constructive notice and were sufficient. By contract appellant had assumed the obligation of the abutting propery owners, for a portion of the street, and if, by the law, abutting property owners were, by the passage and publication of the ordinance, given notice of the city's demand upon them to construct sidewalks at their own cost, if they desired so to do, it would seem, that appellant, when by contract it assumed a part of the obligation primarily fixed by law upon the abutting property owners, had put itself in the same position as the abutting owners, with regard to the notice of demand upon it, by the city, to exercise its option to perform the required work in the construction of the street, if it desired to do the work itself. But whether this be true or not, the evidence shows conclusively, that the mayor of the city, in his official capacity, made formal demand of appellant, that it comply with its agreement in the construction of the street, and that appellant refused to exercise its option, under the contract, to do the work itself, and thereby elected not to do the work itself, as it had the right to do; and, whether or not this notice was given in a strictly formal way, appellant thereby had received actual notice that it would be held responsible for its portion of the improvement, according to the terms of its contract, and, having been given thereby an opportunity to exercise its option and make the improvement itself, and having refused to do so, it will not be permitted, having received the benefit of the improvement, to question the sufficiency of the notice. The contract between the city and appellant made appellant liable for the cost of the

construction of a designated part of the street occupied by its track, and gave to appellant the right, if it so desired, to do the work itself; in other words, it provided that, no matter how the work was done, it should be at the expense of appellant, but that, before being required to pay for the work done by the city, appellant should have the opportunity of doing the work itself. That appellant was afforded that opportunity in the instant case, and refused to avail itself of same, cannot be denied. Nor can it say that it was denied such opportunity, by reason of the fact that before the notice was served upon it by the mayor, the city had contracted with others to do the work. That the city had so done, might have involved it with those with whom it had contracted, but that fact need not have interfered, and is not shown to have interfered in any way, with appellant doing the work, if it had so desired. Mr. Bacon in his testimony stated that the company did not refuse to do the work, because of the failure to make demand upon it, but because of the fact that the company did not approve of the method adopted by the city for improvement of the street. That this was not a sufficient reason for its refusal, is not even argued by counsel for appellant. Moveover, the liability fixed upon appellant, was for the use and benefit of abutting property owners, upon whom, in the absence of such a contract, the burden is cast by the law, which liability the city could not have waived, even had it so desired, and notice, actual or constructive, to appellant, that the city required the improvement of the street, put upon appellant the duty of performing its part of the work itself, if it would escape liability for a construction by the city.

Appellant contends, that the ordinance which required of it, only, that it "furnish rails, connections, spikes and ties, and lay ties and rails," was notice to it, that nothing more was required of it, and that the city had thus waived the right to demand of it, construction of any part of the street. But these things, rails, etc., were no part of the construction of the street, for which the city or abutting property owners were, in any event, liable; they were entirely for appellant's own private use and benefit. The claim that the ordinance was notice to appellant, for this purpose, is a confession that appellant was notified, by the ordinance, of the purpose of the city to improve the street, which carried with it appellant's contractual obligation to pay for its part

of the improvement, unless it did the work before it was done by the city.

The next ground upon which appellant seeks to avoid liability for the improvement, is, that, by the terms of its contract with the city, it was obligated, only, to construct its portion of the street, "with the same kind of material used by the city . . . . and to conform, in all respects, with the remainder of the street so constructed by the city;" that the construction made by the city, of its portion of the street, did not conform, in all respects, with the remainder of the street so constructed by the city. This argument is based upon the fact, that the city required a total excavation of seventeen inches, under appellant's portion of the street, whereas the total excavation, under the rest of the street, was required to be but twelve inches. This difference was made necessary, in order to allow space for appellant's ties upon which its rails were laid; but, except for the fact that this space was provided, as had to be done for the insertion of the necessary support for appellant's track, the construction was in all respects the same in all portions of the street. If this provision had not been made, appellant's ties and track would have had to be placed upon the top of the completed street, or the concrete base omitted from its portion of the street, and to have adopted specifications that would have rendered necessary either of these results, clearly was not contemplated by the contracting parties, and would have rendered appellant's part of the street not in conformity with the rest of it. By reason of the fact that the space must be provided, in the construction of the street, for the railroad's ties and rails, the difference in depth of the excavation for the company's part of the street was absolutely necessary, in order that the construction of the whole street should be uniform, and this contention of appellant is manifestly without merit.

Having concluded that appellant was liable to the city, for the use and benefit of the abutting property owners, against whom the law required, under the plan adopted by the city, that the cost of the improvement be assessed, it is not necessary for us to consider the questions of practice presented by appellant, since none of them affects appellant's liability, but all of them refer to the apportionment, by the court, of the sums recovered by the city from appellant, among the abutting property owners, with which appellant has no concern,

since abutting property owners, by their pleadings herein, are estopped from again asserting against appellant, claims for their respective shares of the recovery.

For the reasons indicated, the judgment is affirmed.